Case 5:23-cv-00059-EKD-JCH   Document 17   Filed 08/05/24   Page 1 of 10
Pageid#: 2635

CLERK'S OFFICE U.S. DISTRICT COURT
AT HARRISONBURG, VA
FILED

August 05, 2024

LAURA A. AUSTIN, CLERK
BY: s/ K. Dotson
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division

| | |
|---|---|
| DARYL R., </br>     Plaintiff, </br> </br> v. </br> </br> MARTIN O'MALLEY, </br> Commissioner of Social Security, </br>     Defendant.[1] | Civil Action No. 5:23cv00059 </br> </br> REPORT & RECOMMENDATION </br> </br> By:   Joel C. Hoppe </br>         United States Magistrate Judge |

Plaintiff Daryl R. asks this Court to review the Commissioner of Social Security's final decision denying his claims for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 404–434, and for supplemental security income ("SSI") under Title XVI of the Social Security Act, *id.* §§ 1381–1383f. The case is before me by referral under 28 U.S.C. § 636(b)(1)(B). Having considered the administrative record ("R."), ECF No. 7-1; the parties' briefs, ECF Nos. 12, 16; and the applicable law, I find that substantial evidence does not support the Commissioner's final decision that Daryl was not disabled during the relevant time. R. 1, 21–38. Accordingly, I respectfully recommend that the presiding District Judge reverse the decision and remand the matter under the fourth sentence of 42 U.S.C. § 405(g).

I. Standard of Review

The Social Security Act authorizes this Court to review the Commissioner's final decision that a person is not entitled to disability benefits. 42 U.S.C. §§ 405(g), 1383(c)(3); *see Hines v. Barnhart*, 453 F.3d 559, 561 (4th Cir. 2006). The Court's role, however, is limited—it cannot "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for that of agency officials. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012).

---

[1] Commissioner O'Malley is hereby substituted as the named Defendant in this action. 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d).

1

Instead, a court reviewing the merits of the Commissioner's final decision asks only whether the Administrative Law Judge ("ALJ") applied the correct legal standards and whether substantial evidence supports the ALJ's factual findings. *Meyer v. Astrue*, 662 F.3d 700, 704 (4th Cir. 2011); *see Riley v. Apfel*, 88 F. Supp. 2d 572, 576 (W.D. Va. 2000) (citing *Melkonyan v. Sullivan*, 501 U.S. 89 (1991)).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is "more than a mere scintilla" of evidence, *id.*, but not necessarily "a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Substantial evidence review considers the entire record, and not just the evidence cited by the ALJ. *See Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487–89 (1951); *Gordon v. Schweiker*, 725 F.2d 231, 236 (4th Cir. 1984). Ultimately, this Court must affirm the ALJ's factual findings if "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam). However, "[a] factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

A person is "disabled" under the Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Social Security ALJs follow a five-step process to determine whether a claimant is disabled. The ALJ asks, in sequence, whether the claimant (1) is working; (2) has a severe impairment that satisfies the Act's duration requirement; (3) has an impairment that meets or equals an impairment listed in

the Act's regulations; (4) can return to his or her past relevant work based on his or her residual functional capacity; and, if not (5) whether he or she can perform other work available in the economy. *See Heckler v. Campbell*, 461 U.S. 458, 460–62 (1983); *Lewis v. Berryhill*, 858 F.3d 858, 861 (4th Cir. 2017); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).[2] The claimant bears the burden of proof through step four. *Lewis*, 858 F.3d at 861. At step five, the burden shifts to the agency to prove that the claimant is not disabled. *See id.*

## II. Procedural History

Daryl filed for SSI and DIB in late 2019. *See* R. 276–85, 287–88. He alleged that he had been disabled since July 19, 2018, because of a knee problem, high blood pressure and a heart problem, high cholesterol, depression, and an anxiety disorder. R. 309–11. Daryl was 44 years old on his alleged onset date, R. 107, making him a "younger" person under the regulations, 20 C.F.R. §§ 404.1563(c), 416.963(c). Virginia Disability Determination Services ("DDS") denied both claims initially in September 2020, R. 104, 106, and upon reconsideration in December 2021, R. 135–36. On November 18, 2022, Daryl appeared with counsel and testified at a hearing before ALJ Carol Moore. R. 47–69. A vocational expert ("VE") also testified. R. 69–75.

ALJ Moore issued an unfavorable decision on January 23, 2023. R. 21–38. At step one, she found that Daryl had not worked "since July 19, 2018, the alleged onset date." R. 24. Daryl had the following severe medically determinable impairments ("MDIs") during this relevant period: "osteoarthritis of the right knee, status post total knee replacement; congenital aortic heart disease, status post valve replacement; ischemic heart disease, status post ST-elevated myocardial infarction; and obesity." *Id.* Daryl's depressive disorder was a non-severe MDI

---

[2] Unless otherwise noted, citations to the Code of Federal Regulations refer to the version in effect on the date of the ALJ's written decision.

because it did "not cause more than minimal limitation in [his] ability to perform basic mental work activities." *Id*. As part of this determination, ALJ Moore found that Daryl had "mild" limitations understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing himself. R. 24–25. At step three, she found that Daryl's severe physical MDIs did not meet or medically equal the relevant listings. R. 25–27 (citing 20 C.F.R. pt. 404, subpt. P, app. 1 §§ 1.18, 4.02, 4.04).

ALJ Moore then evaluated Daryl's residual functional capacity ("RFC") during the relevant time. *See* R. 27–36. She found that he could perform "sedentary work" as defined in the regulations except:

> [he] needs the use of a case for ambulation; [only] occasional pushing/pulling with the upper extremities; no use of foot controls; never climb[ing] ropes, ladders, or scaffolds; occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling; frequent reaching and handling; and [must] avoid concentrated exposure to extreme heat and cold, wetness, humidity, and hazards.

R. 27 (citing 20 C.F.R. §§ 404.1567(a), 416.967(a)). She repeatedly found that Daryl could meet all the strength demands of sedentary work, "including lifting/carrying 10 pounds occasionally . . . , standing/walking 2 hours in an 8-hour workday, [and] sitting 6 hours in an 8-hour workday." R. 35. *See also* R. 27, 33–34, 36. She did not identify any MDI-related limitations on Daryl's ability to sustain mental work activities. R. 27; *see* R. 24–25, 34–35.

At step four, ALJ Moore found that Daryl's sedentary RFC ruled out his returning to his past work as a landscape laborer, short-order cook, or fast-food manager. *See* R. 36–37 (citing R. 71–73). Based on the VE's testimony, however, ALJ Moore found at step five that a hypothetical person with this RFC and Daryl's vocational profile could do certain "unskilled" sedentary jobs (document preparer, weight tester, order clerk) that offered a significant number of jobs in the national economy. R. 37–38 (citing R. 72–73). Accordingly, she found that Daryl was not

4

disabled from July 19, 2018, through the date of her decision. R. 38. The Appeals Council denied Daryl's request to review that decision, R. 1–5, and this appeal followed.

III. Discussion

Daryl argues that ALJ Moore's RFC analysis is legally flawed because she found that a medical opinion from consultative examiner Lorick Fox, P.A.-C, was "generally persuasive" evidence of Daryl's physical abilities and limitations, R. 34–35 (citing R. 1426, 1429), but then failed to explain why her own RFC finding, R. 27, omits the specific exertional limitations that the VE testified would preclude all work. *See* Pl.'s Br. 7–10; R. 27, 34–35, 72–74. I agree.[3]

*

A claimant's RFC is his "maximum remaining ability to do sustained work activities in an ordinary work setting" for eight hours a day, five days a week despite his MDIs and related symptoms or treatment. SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996) (emphasis omitted). It is a factual finding "made by the [ALJ] based on all the relevant evidence in the case record," *Felton-Miller v. Astrue*, 459 F. App'x 266, 230–31 (4th Cir. 2011), including objective medical evidence, medical opinions, and the claimant's own statements, 20 C.F.R. §§ 404.1545(a), (e), 416.945(a), (e). *See, e.g.*, *Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 659 (4th Cir. 2017) ("This RFC assessment is a holistic and fact-specific evaluation" made after the ALJ "evaluate[s] 'all' relevant record evidence" (quoting 20 C.F.R. § 404.1520(e)).

The Commissioner's regulations "specif[y] the manner in which an ALJ should assess a claimant's RFC." *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019). First, because RFC is by definition "a function-by-function assessment based upon all of the relevant evidence of [the claimant's] ability to do work related activities," SSR 96-8p, 1996 WL 374184, at *3, the ALJ's

---

[3] Daryl also asserts that ALJ Moore made a similar error when evaluating a medical opinion from consultative examiner Joseph Cianciolo, Ph.D. *See* Pl.'s Br. 8–10 (citing R. 27, 35, 1428–29). The Commissioner can address this issue on remand, if necessary.

5

decision must identify each impairment-related functional limitation that is supported by the record. *See Monroe*, 826 F.3d at 179. The RFC finding itself should incorporate all credibly established "restrictions caused by medical impairments and their related symptoms" that reduce the claimant's "capacity to do work-related physical and mental activities" for eight hours a day, five days a week. SSR 96-8p, 1996 WL 374184, at *1–2; *see Mascio v. Colvin*, 780 F.3d 632, 637–40 (4th Cir. 2015); *Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016). Second, the ALJ's decision must provide a "narrative discussion describing" how specific medical facts and non-medical evidence "support[] each conclusion" in the RFC assessment, SSR 96-8p, 1996 WL 374184, at *7, and logically explaining how she weighed any conflicting or inconsistent evidence in arriving at those conclusions, *Thomas*, 916 F.3d at 311. Generally, a reviewing court will affirm the ALJ's RFC findings when she considered all the relevant evidence under the correct legal standards, *Brown v. Comm'r of Soc. Sec. Admin.*, 873 F.3d 251, 268–72 (4th Cir. 2017), and her written decision builds "an accurate and logical bridge from that evidence to h[er] conclusion[s]," *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) (cleaned up), *superseded on other grounds as recognized in Rogers v. Kijakazi*, 62 F.4th 872 (4th Cir. 2023). *See Shinaberry v. Saul*, 952 F.3d 113, 123 (4th Cir. 2020); *Thomas*, 916 F.3d at 311–12.

"Medical opinions"—that is, "statement[s] from a medical source about what [the claimant] can still do despite" his MDIs and whether the claimant has "impairment-related limitations or restrictions" in meeting specific physical, mental, or environmental demands of work, 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2)—can be critical to a proper RFC analysis. *See, e.g.*, *Oakes v. Kijakazi*, 70 F.4th 207, 212–15 (4th Cir. 2023). The regulations specify "how [ALJs] consider medical opinions" as part of their disability determinations and "how [ALJs] articulate" certain findings in their written decisions. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). At

6

the very least, ALJs must articulate "how persuasive" they find each source's medical opinion and "explain how [they] considered the supportability and consistency factors," *id.* §§ 404.1520c(b)(2), 416.920c(b)(2), in making this finding. *See Stephen R. v. O'Malley*, No. 21-2292, 2024 WL 3508155, at *4 (4th Cir. July 23, 2024). "When [ALJs] find that two or more medical opinions . . . about the same issue are both equally well-supported and consistent with the record but are not exactly the same," then they also "will articulate how [they] considered the other most persuasive factors" listed in subparagraphs (c)(3)–(5). 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3) (parenthetical citations omitted).

In addition to these regulatory requirements, the ALJ's decision must always build an accurate and "logical bridge between the evidence and the ALJ's conclusion that [a medical] opinion," *Oakes*, 70 F.4th at 214, is or is not "persuasive" evidence of the claimant's allegedly disabling medical condition, *see id.* at 212–13. When the court is "'left to guess' as to how the ALJ reached her evaluation of the conflicting medical opinions in light of the evidence of record," then it cannot "review the reasonableness of her conclusions," *Testamark v. Berryhill*, 736 F. App'x 395, 398 (4th Cir. 2018) (per curiam) (quoting *Mascio*, 780 F.3d at 638), to ensure that "the ALJ's decision is supported as a matter of fact and law," *Keene v. Berryhill*, 732 F. App'x 174, 177 (4th Cir. 2018) (per curiam).

ALJ Moore's written decision does not meet this deferential standard of review. Daryl's voluminous record contains at least four conflicting medical opinions about the extent to which his severe physical MDIs reduced his capacities to lift/carry, sit, and stand/walk during a normal eight-hour workday. *See* R. 116, 130, 155, 1426, 1801, 2577. P.A. Fox, who examined Daryl in August 2020, gave the most restrictive assessment. R. 1426; *see* R. 1419–26 (Ex. B9F). He opined that Daryl could occasionally lift "[u]p to 10 lbs," but never lift/carry any greater weight;

7

sit for "about 4" hours, stand for "less than 2" hours, and walk for "less than 2" in an 8-hour workday; and needed an assistive device to ambulate. R. 1426. Tara Prieur, M.D., who examined Daryl in November 2021, gave a somewhat less-restrictive assessment. R. 1801; *see* R. 1797–1804 (Ex. B16F). She opined that Daryl could frequently "lift and carry up to 10 lbs.," "sit for at least 8 hours," "stand for at least 4 hours," and "walk for at least 4 hours" in an 8-hour "workday with usual breaks." R. 1801. At the hearing, the VE testified no jobs would be available to a person who "could perform sedentary work, but [was further limited to] sitting for four hours in an eight-hour day, . . . standing for less than two hours in an eight-hour day, and walking for less than two hours in an eight-hour day." R. 74; *see* R. 1426. The reason, she explained, is that "[a]t the sedentary level, anything over two hours of standing and walking is considered light [work]. And if you add up the hours, four hours sitting, less than two hours for standing, and less than two for walking, *it would not equal an eight-hour day*." R. 74 (emphasis added). If this same person could "sit[] for six hours of an eight-hour day," however, then he or she would be able to do sedentary jobs like document preparer, weight tester, or order clerk. R. 72–73.

ALJ Moore summarized P.A. Fox's and Dr. Prieur's medical opinions in her RFC analysis—specifically including the different limitations that each examining source put on Daryl's ability to sit and stand/walk in an eight-hour day. R. 34–35 (citing R. 1426, 1804). She found that P.A. Fox's "opinion [was] generally persuasive *as it is supported by and consistent with the medical evidence of record* regarding a limitation to work at the sedentary exertion level . . . and the need for a cane for ambulation." R. 34 (emphasis added). She also found that Dr. Prieur's "opinion [was] generally persuasive *as it is supported by and consistent with the medical evidence of record* that reflects the claimant is limited to work at the sedentary exertional level . . . due to the combined effects of his severe impairments." R. 35 (emphasis added). The ALJ did

8

not cite any specific "medical evidence" to support either persuasiveness finding, R. 34–35, and she did not "explain how [she] considered the supportability and consistency factors" in making that finding, 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).[4] This is reversible legal error. *See, e.g.*, *Stephen R.*, 2024 WL 3508155, at *4 (citing *Patterson*, 846 F.3d at 663).

Moreover, ALJ Moore repeatedly found that Daryl could meet *all* the exertional demands of "sedentary" work, R. 27, 33, 34, 35, including "standing/walking 2 hours . . . [and] sitting 6 hours in an 8-hour workday," R. 35. *See also* R. 27, 33, 36. These RFC findings contradict P.A. Fox's medical opinion that Daryl could stand and walk for fewer than 2 hours each and sit for at most four hours in an eight-hour workday. The ALJ never explained why she rejected the only two work-preclusive aspects of P.A. Fox's otherwise "generally persuasive" opinion. *Cf. Warren v. Astrue*, No. 2:08cv3, 2008 WL 3285756, at *11 (W.D. Va. Aug. 8, 2008) ("The ALJ's decision cannot be supported by substantial evidence when he fails to adequately explain his rationale for rejecting the opinions of those whom he otherwise gave great weight to in arriving at his decision."). Nor did she explain how she considered any of the "other most persuasive factors," 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3), in concluding that P.A. Fox's and Dr.

---

[4] The ALJ's terse (and circular) analysis of these medical opinions also misapplied the governing regulation. *See, e.g.*, *Stephen R.*, 2024 WL 3508155, at *4 (concluding that "the ALJ did not correctly apply 20 C.F.R. § 404.1520c to reports by state psychologists, . . . which informed his evaluation of [Stephen's] RFC," where the ALJ "invoked" the supportability and consistency factors in his decision, but "his analysis was threadbare and lacked citations" to any specific evidence in the record). Supportability and consistency are distinct legal concepts under this regulation. 20 C.F.R. §§ 404.1520c(b)(2)–(c)(2), 416.920c(b)(2)–(c)(2); *Oakes*, 70 F.4th at 212. "Supportability" requires ALJs to consider "the objective medical evidence and . . . explanations *presented by* [the] medical source . . . to support his or her [own] medical opinion(s)." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1) (emphasis added); *see Oakes*, 70 F.4th at 212. "Consistency" requires ALJs to compare that source's medical opinions to "evidence *from other* medical and nonmedical sources" in the claimant's record. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2) (emphasis added); *see Oakes*, 70 F.4th at 212. It is not enough for the ALJ to "invoke[] these factors" in her decision. *Stephen R.*, 2024 WL 3508155, at *4. She must adequately explain how she considered both factors in her persuasiveness determination. *See id.* (citing *Patterson*, 846 F.3d at 663).

9

Prieur's materially different opinions of Daryl's abilities to sit and/stand walk were both "generally persuasive" evidence of his exertional RFC, R. 34–35. "Put simply, the ALJ's lack of explanation requires remand." *Stephen R.*, 2024 WL 3508155, at *4 (quoting *Patterson*, 846 F.3d at 663).

## IV. Conclusion

For the foregoing reasons, I respectfully recommend that the presiding District Judge **REVERSE** the Commissioner's final decision dated January 23, 2023, and **REMAND** this matter under the fourth sentence of 42 U.S.C. § 405(g).

### Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14 day period, the Clerk is directed to transmit the record in this matter to the presiding district judge.

The Clerk shall send certified copies of this Report and Recommendation to the parties.

ENTER: August 5, 2024

Joel C. Hoppe
United States Magistrate Judge